**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY A/S/O SIGNAL SERVICE INC.,** <br> **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **NO.  23-1857** |
| **FORD MOTOR COMPANY AND ALTEC INDUSTRIES, INC.,** <br> **Defendants.** | |

<u>**MEMORANDUM**</u>

**HODGE, J.**                                                                     **September 26, 2024**

## I.      BACKGROUND

### A.      Factual Background[1]

This case arises from a motor vehicle fire that occurred on June 16, 2021 when a 2021 Ford E450 Econoline Super Duty Bucket truck, VIN 1FDXE4FN1MDC07341 (the "Vehicle") erupted into flames while being driven on Morehall Road in Devault, Pennsylvania. (ECF No. 1-3 ¶ 9.) While the Vehicle was owned by nonparty Signal Service, Inc. ("Signal Service"), Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") provided motor vehicle and other insurance to Signal Service for the Vehicle. (*Id.* at ¶¶ 2–3.) Because of the claims made on its insurance policies and the payments made pursuant thereto, Penn National states that it "became subrogated to the rights and interests of the subrogor for any monies paid thereunder, including the claims giving rise to the within cause of action." (*Id.* at ¶ 3.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Plaintiff asserts the following three claims against Defendants Ford Motor Company ("Ford") and Altec Industries, Inc. ("Altec"):

- Negligence  (Count I as to Ford, Count IV as to Altec);

- Strict Liability (Count II as to Ford, Count V as to Altec); and

- Breach of Express and Implied Warranties (Count III as to Ford, Count VI as to Altec).

(*See generally* ECF No. 1-3.) Plaintiff alleges that the fire was "a result of loose brake line fittings which caused brake line fluid to come into direct contact with the hot engine and subsequently ignited the subject vehicle." (*Id.* at ¶ 10.) Moreover, Plaintiff asserts that Defendants Ford Motor Company ("Ford") and Altec Industries, Inc. ("Altec") "distributed and/or sold the [V]ehicle in a defective condition, [that was] unreasonably dangerous to its customers and to [Signal Service]." (*Id.* at ¶¶ 19, 38.)

### B.    Procedural History

Ford moves to dismiss the Complaint. (ECF No. 5.) Penn National opposes Ford's motion to dismiss. (ECF No. 12.) Altec joins in Ford's motion to dismiss stating that "the relief sought in Ford's motion applies equally to Altec Industries, Inc." (ECF No. 16.) (together, ECF Nos. 5 and 16 are referred to as the "Motion.") Before filing its joinder in Ford's motion to dismiss, Altec filed an Answer to Penn National's Complaint. (ECF No. 15.) Ford opposes Altec's joinder in Ford's motion to dismiss. (ECF No. 18.)

## II.    LEGAL STANDARD

In assessing whether Penn National has alleged claims upon which relief may be granted against Ford, the Court applies the familiar standard applicable to Rule 12(b)(6) motions. A plaintiff's complaint must provide merely a "short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). "To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must: 'First, . . . tak[e] note of the elements a plaintiff must plead to state a claim. Second, . . . identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)) (internal citations and quotation marks omitted).

As to Penn National's claims against Altec, Altec filed an Answer and then filed a joinder in Ford's motion to dismiss immediately thereafter. (ECF Nos. 15, 16.) District courts within the Third Circuit have construed motions to dismiss under Rule 12(b)(6) filed after the close of pleadings as motions for a judgment on the pleadings under Rule 12(c). *See, e.g.*, *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). Thus, this Court will address the merits of Altec's joinder in Ford's motion to dismiss as though it had been submitted as a motion under Rule 12(c) instead of under Rule 12(b)(6). A motion for judgment on the pleadings pursuant to Rule 12(c) is

3

analyzed using the same standard as a motion to dismiss under Rule 12(b)(6). *Turbe*, 938 F.2d at 428. Therefore, the Court must accept the allegations in the Complaint as true and draw all reasonable factual inferences in favor of Penn National. *Id.*

## III.   DISCUSSION

Ford moves to dismiss the Complaint, arguing as a threshold issue that Penn National has not alleged the facts necessary to assert a claim as a subrogee. (ECF No. 5-1 at 5–6.) Ford argues that Penn National's negligence and strict liability claims (Counts I and II) should be dismissed because Penn National does not allege anything other than purely economic loss. (*Id.* at 3–5.) Finally, Ford asserts that Penn National has failed to state a plausible claim for relief against it. (*Id.* at 6–8.) Altec joins in Ford's motion to dismiss. (ECF No. 16.) and Penn National opposes the Motion as to both Ford and Altec. (ECF Nos. 12, 18.) For the reasons that follow, the Motion is granted in part and denied in part.

### A.   Penn National's Right of Subrogation

Pennsylvania law provides that an insurance company cannot exercise its right of subrogation until the insured has been fully compensated or "made whole." *Jones v. Nationwide Prop. & Cas. Ins. Co.*, 32 A.3d 1261, 1267 (Pa. 2011). Ford asserts that Penn National has not alleged that Signal Service has been fully compensated or "made whole" and therefore Penn National has not alleged the threshold facts necessary to assert a claim as a subrogee. (ECF No. 5-1 at 5 (citing ECF No. 1 at ¶ 12).) Penn National rejects this assertion, countering that Signal Service has in fact been fully compensated or "made whole." (ECF No. 12-5 at 7–8.) Penn National alleges in the Complaint that "as a result of claims made [under policies of insurance which were in full force and effect on all relevant dates, and at all relevant times] and payments made pursuant thereto, Penn National became subrogated to the rights and interests of the

4

subrogor for any monies paid thereunder, including the claims giving rise to the within cause of action." (ECF No. 1-3 at ¶ 3.) The Court finds that, while Penn National could have been more precise in crafting its allegation that Signal Service has been "made whole," Penn National has plausibly alleged that Signal Service has been fully compensated, and therefore Penn National has alleged the threshold facts necessary to assert a claim as a subrogee.

      **B.**    **Economic Loss Doctrine**

Based upon what is commonly referred to as the economic loss doctrine, "recovery in tort is barred in product liability actions between commercial enterprises where the only damage alleged is to the product itself, whether or not the defect posed a risk of other damage or injury or manifested itself in a sudden and calamitous occurrence." *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128, 132 (Pa. Super. 1989) (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 576 U.S. 858 (1986)). The economic loss doctrine has been applied to motor vehicle fires. *See Jones v. Gen. Motors Corp.*, 631 A.2d 665 (Pa. Super. 1993).

Ford asserts that the rule set forth in *REM* is based on two principles that both apply directly to this case. First, "[s]ince consumers of the product can insure against the loss of the product and its use, there is no need to provide them with the special protection of tort remedies." *REM Coal Co., Inc.*, 563 A.2d 128 at 132. Ford argues that this first principle applies to Penn National because it is an insurer asserting subrogation rights under its insurance policies with Signal Service. (ECF No. 5-1 at 4.) Second, "damage to the product is 'most naturally understood as a warranty claim.'" *Id.* (quoting *East River*, 576 U.S. at 872). The second principle set forth in *REM* is that "warranty law is suited to economic loss cases because in such cases, the parties have the opportunity to set the terms of their agreement regarding product value and quality in advance." *Id.* at 133 (citing *East River*, 576 U.S. at 873–74). Ford argues that Penn

National has conceded this point by asserting breaches of implied and express warranties in Count III of the Complaint. (ECF No. 5-1 at 4.) Penn National responds that while the economic loss doctrine applies "where the only damage alleged is to the product itself," the doctrine does not apply in this instance because it alleges damages to the personal property of the driver of the Vehicle in addition to the damage to the car itself. (ECF No. 12-5 at 3 (citing *REM Coal*, at 563 A.2d at 132).)

Ford does not contend that damage to the personal property of the driver of the Vehicle would be insufficient for Penn National to overcome the economic loss doctrine. Rather, Ford claims that the Complaint is "entirely devoid of *any* allegations concerning these damages." (ECF No. 17 at 2.) The Court does not find the Complaint is devoid as to any allegations concerning the loss of personal property. The Court does find that  Penn National could have alleged the nature of the damage to the driver's personal property with more specificity. However, Penn National does plausibly allege that the driver's personal property was damaged and a loss was suffered as a result. (*See* ECF No. 1-3 at ¶¶ 15, 22, 33–34, 42.) The Court therefore finds that Penn National has sufficiently pled that the driver's personal property was damaged such that the question of what damage was sustained is a question of fact.[2]

C.     **Failure to State a Claim**

Ford asserts that the Complaint contains insufficient allegations of fact to assert a claim against it. (ECF No. 5-1 at 6–8.) As to Penn National's breach of express warranty claim, Ford argues that Penn National "cannot identify a single warranty allegedly breached." (ECF No. 5-1

---

[2] Because the Court finds that the economic loss doctrine does not bar Plaintiff's  negligence and strict liability claims based upon the alleged damage to the driver's personal property, it need not address Penn National's argument in the alternative that the doctrine does not bar its claims due to Pennsylvania's "reasoned approach" to the rule set forth in *Dittman v. UPMC* and other related cases. *See, e.g.*, *Dittman v. UPMC*, 649 Pa. 496, 502 (Pa. 2018).

at 7.) As Ford notes, the Complaint merely alleges that "[t]he manual with warranties was destroyed in the fire, but Ford has better access to said warranties and, therefore is not prejudiced by them not being attached hereto." (*Id.* (citing ECF No. 1-3 at ¶ 28).) Penn National does not specifically respond to Ford's argument that it has failed to state claim as to its breach of express warranty claim. (*See generally* ECF No. 12-5.) Instead, Penn National argues generally that the Court should not dismiss its claims because the Complaint "properly places Ford on notice of the claims against it." (ECF No. 12-5 at 8.) Without alleging with specificity which warranties Ford breached, Penn National is not actually placing Ford on notice as to the specific express warranties that it allegedly breached. Moreover, as Ford argues, Penn National's claim that the "manual with the warranties was destroyed in the fire" is a concession that it is merely speculating that there was some warranty in place that Ford may have breached. (ECF No. 17 at 7, n. 4.) This is insufficient and, as a result, makes this claim in the Complaint deficient. Moreover, the owner manuals and warranty information for the 2021 Ford E-450 are publicly available on Ford's website. (*Id.* (citing 2021 E-450 Owner Manuals, Warranties, and Other Information, *available at* https://www.ford.com/support/vehicle/e-450/2021/owner-manuals/ (last accessed Sept. 23, 2024)).) Penn National's failure to specifically reference any express warranty in support of its claim due to a sheer lack of diligence is incomprehensible. Thus, the Court finds that Penn National has failed to state a plausible claim for relief as to its breach of express warranty claim.

While Ford asserts generally that Penn National has not alleged sufficient facts to state a plausible claim for relief as to its breach of warranty claims, Ford does not set forth any argument specific to Penn National's breach of implied warranty claim. (*See generally* ECF Nos. 5, 17.) Penn National alleges that Ford breached two implied warranties in its Complaint: the

implied warranty of fitness for a particular purpose and the implied warranty of merchantability. (ECF No. 1-3 at ¶¶ 26–27 (citing 13 Pa. C.S.A. §§ 2-315, 2-314(c)).) In support of its claim for breach of the implied warranty of fitness for a particular purpose, Penn National states that the Vehicle "was not fit for the particular purpose for which such produces are required as it was prone to overheating, failure and ignition under normal operation." (ECF No. 1-3 at ¶ 26.) As to its claim for breach of implied warranty of merchantability, Penn National asserts that "the subject vehicle was not fit for the ordinary uses for which the subject vehicle was used." Based upon the allegations set forth in Penn National's Complaint, the Court finds that Penn National has stated a plausible claim for relief as to its claim for breach of implied warranty.

Ford also argues that Penn National fails to state a claim for negligence. (ECF No. 5-1 at 7–8.) In its Complaint, Penn National alleges that the damages incurred by way of the Vehicle fire "were the direct and proximate result of the negligence and carelessness of Ford." (ECF No. 1-3 at ¶ 14.) The Complaint goes on to list the ways in which Ford failed to exercise reasonable care. (*Id.*) Penn National also alleges that Ford "direct[ed] the sale" of the Vehicle, and "distributed and/or sold the [V]ehicle in a defective condition." (*Id.*) Viewed in the light most favorable to Penn National, these allegations are sufficient at this stage in the proceedings. The Court therefore finds that Penn National has stated a plausible claim for relief as to its negligence claim.

### D.    Altec's Motion for Judgment on the Pleadings Is Also Granted in Part and Denied in Part.

As set forth in Section I.B., Altec joined in Ford's motion to dismiss. (ECF No. 16.) Penn National's allegations as to Altec are almost identical to Penn National's allegations as to Ford (ECF No. 1-3), and Penn National's response in opposition to Altec's joinder in Ford's motion to dismiss is almost identical to its response in opposition to Ford's motion to dismiss (ECF No.

18). Despite the almost identical nature of the claims and defenses asserted, Altec's procedural posture is distinct from Ford's because Altec filed its joinder in Ford's motion to dismiss *after* filing an Answer. For the reasons set forth in Section II, this Court analyzes the merits of Altec's joinder in Ford's motion to dismiss as though it had been submitted as a motion under Rule 12(c). Because a motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed using the same standard as a motion to dismiss under Rule 12(b)(6), this Court finds that Altec's motion for judgment on the pleadings is granted in part and denied in part. *See, e.g.*, *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). The Court therefore finds that, as to Altec, Penn National has alleged the threshold facts necessary to assert a claim as a subrogee and its tort claims are not barred by the economic loss doctrine. Moreover, Penn National has stated a plausible claim for relief against Altec as to its strict liability, negligence, and breach of implied warranty claims. Nevertheless, Penn National has failed to state a plausible claim for relief against Altec as to its breach of express warranty claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants Ford and Altec's motion to dismiss and motion for judgment on the pleadings respectively. The Court grants both Defendants' motions as to Plaintiff Penn National's breach of express warranty claim. The Court denies both Defendants' motions as to Plaintiff's negligence, strict liability, and breach of implied warranty claims.

An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**